## Sidkoff Family Foundation

*Raymond Kitty*, for petitioners.

CARROLL, J., July 20, 1950.—The matter before us is an application for the grant of articles of incorporation and a charter of a nonprofit corporation under the Act of May 5, 1933, P. L. 289, the subscribers to the petition and application being all members of one family. Following its filing and after the requirements of the act had been complied with we referred the application to a master for the purpose of taking testimony and reporting to the court. Thereafter, the master held a meeting, took testimony, and reported thereon. He determined the purpose of the corporation to be "for the relief of the distressed and needy", that such purpose was lawful, and concluded that such a corporation would fill a worthy goal in relieving "those considered by its board to be truly needy and distressed". Upon

such findings and conclusions the master recommended that the petition be granted.

. The purposes for which the corporation was formed, as stated in the application, are:

"To give financial assistance to relieve the needy and distressed and furnish them with religious and educational opportunities and medical care, either directly or through contributions to corporations, trusts, community chests, funds or foundations organized and operated exclusively for religious, charitable, scientific literary or educational purposes. No part of the pecuniary gain or profit, incidental or otherwise, is to inure to the members of the Corporation or to any individual member. To engage in social activities and general promotion of the social welfare to the members of the Foundation and to serve as a means of communication among the members and to hold together as a family unit the members of the Foundation by all means."

The evidence offered to establish this declared purpose was the testimony of four witnesses, three of whom are petitioners. It does not appear from the application or the testimony what the relationship of the additional witness, a so-called trustee, Jack Kravitz, is, either to the family group or to any of the incorporators. This witness stated that he considered the purposes of the corporation to be as those expressed by the witness Manual Sidkoff, who stated the purposes in his testimony. This latter witness is a member of the bar and it is apparent that the effort to obtain a charter is under his direction. The other two witnesses testified very briefly, affirming generally the testimony of Manual Sidkoff, but adding that they conceived the purpose of the corporation to be to have a good time, and if there be any money left to endow a hospital bed or to give it to charity. There was no testimony of any plan

to endow a bed or of any financial policy to accumulate funds for any purpose.

The testimony in main came from the witness, Manual Sidkoff, and, rather than establishing the purposes stated in the application, establishes very clearly that these expressions of purpose are mere platitudes and that the real intention of the applicants, as expressed by this witness, is to secure a charter for a voluntary beneficial association, organized to provide for and limit whatever benefits it may create or produce to its members only; all members being of a restricted family group and not in any sense, in their organization or as individuals, serving the public "at large".

A parallel of the declared purposes in the application and the pertinent testimony to establish these purposes clearly demonstrates a divergence so broad as to be irreconcilable and the fact that the master completely failed to comprehend the real purpose or to determine that, with respect to the declared purpose, the testimony itself is false in that it flatly contradicts the general stated purposes, illuminates the reason for his error of recommendation.

Lifting out of the testimony of Manual Sidkoff but a few statements, such conclusion is irresistible. He testified:

"A. The purpose is primarily social. It is also charitable, and for the purpose of helping one another, that is, members of the family who might be in need of some funds due to temporary distress . . .

"Those who are eligible are only the direct progeny of my mother, and father, children, grandchildren and great-grandchildren. The children of our aunts and uncles are not eligible to join.

"Because of the fact that there are so many eligible for membership, we decided on the corporation. . . .

"Q. Is this aid limited to members of your family, or can anyone apply for help?

"A. You mean strangers?

"Q. Yes?

"A. No strangers, only the members of the family are eligible for membership in this organization. Those eligible are the direct progeny of my father and mother. . . .

"Q. You said this aid is limited to members of the family?

"A. Yes. . . .

"Q. You spoke of the fact, that if the funds are not used by the members of the family you intend to endow a hospital bed?

"A. Yes. We may even pick up a young man or young woman and give a scholarship. . . ."

"Q. Do you contemplate registering the corporation within the Treasury Department?

"A. No. The income will be negligible. . . . This is a homogenous group, banding together for the purpose of perpetuating the name of our family. . . ."

As this witness proceeded with his testimony, these patent differences are reflected to such extent that the master suggested an amendment to the original application to conform with the testimony and subsequently on question by the master this witness agreed that the application should be amended to show "that the primary purpose is to help members of the Sidkoff family". Such amendment was never made but had it been it would not have brought this application within the provisions of the Nonprofit Corporation Law of May 5, 1933, supra, as erroneously conceived by the master.

Briefly summarizing the testimony of all the witnesses, it is clear that the real purpose is to organize the direct descendants of one person into a family group, primarily for social purposes and, secondarily,

to give assistance and benefits only to those needy and distressed members of the family who are members of, or eligible to be members of, such group and not generally (i.e., the public at large) as is stated in the application. The dispensing of whatever aid or benefit is contemplated exclusively to its members is in sharp contradiction to the application which provides that "no part of the pecuniary gain or profit, incidental or otherwise, is to inure to the members of the Corporation or to any individual member". Moreover, this function of the proposed corporation, which seems to be its primary, if not in truth its exclusive, purpose, cannot be executed as no provision to do so is in contemplation. Such an enterprise, if on a sound basis, requires accumulations of income and, as more persons become eligible, reserves of cash. Here, in addition to having no plan, this group anticipates no income, for the testimony is that "the income will be negligible. There is not enough money involved" (to require registration with the Treasury Department). "The amount is small each year." If the dues and income are so negligible, what is the necessity for a corporation? It seems to us that if, in such circumstances, we had discretion under the law to grant a charter, we should hesitate before doing so to a corporation with so little corporate security that its members would be subject to call in order to carry out its purpose.

Insofar as the collateral purposes of the proposed corporation are concerned, there is nothing in the testimony which established them as valid under the act of assembly. There is nothing in the law which permits us to grant a charter for a group organized primarily for social purposes and if it be necessary to utilize the legal fiction of a corporation to preserve a family name or to honor one's parents, then it seems to us that such process, while novel, would depreciate

such name and detract from it. However, we do not think this is necessary in any case and find that such a purpose is not a valid one under law.

Under the testimony, the entity sought to be created is not, under the law, a corporation of the first class, but is rather a beneficial organization and, as such, comes clearly within that class of voluntary associations which, since 1933 by express mandate of the Legislature, cannot be chartered as a corporation of the first class in this Commonwealth. Prior to the Act of May 5, 1933, P. L. 289, such an association or group or beneficial organization could be incorporated, but since the passage of that act this cannot be done.

Only recently we determined the same question in a similar case before us. In that case, Krassen-Luber Family Circle Foundation, 71 D. & C. 353, the application was for a charter under the Act of 1933 and there was only one fact therein not in the case before us. The presence of that fact, which related to the avoidance of tax liability, was no part of the consideration upon which our determination rested. In our opinion, filed February 21, 1950, we analyzed the definition of section 2 of the act, which provides as follows:

" 'Nonprofit Corporation' means a corporation organized for a purpose or purposes not involving pecuniary profit, incidental or otherwise, to its members."

and we held:

"An analysis of this definition shows that the limitation against obtaining pecuniary profit is directed not only against the corporation as such, but is also directed against its members. If it is intended that any of the members of the association, irrespective of whether it is because of need or other adversity, are to receive benefits from the funds collected, contributed, or obtained by the corporation, the association

pro tanto is a profitable one. If its members can obtain, even incidentally, a pecuniary profit by reason of their corporate organization, the creation of such a corporation is in defiance of the plain language of the Nonprofit Corporation Law of 1933.

"Providing for the needs or welfare of members of one's family, when they are in distress, is not an act of charity. Contributions for such a purpose are at all times a moral duty and may even become a legal obligation enforcible through the processes of our laws. It follows that an organization to create a fund for such a purpose is not a charity. The form of a charitable foundation cannot be twisted into a method of obtaining financial benefits for its members, even in times of need or distress. Nor can the many special advantages which the laws of our municipal, State and Federal governments bestow on corporations of this class be obtained by those who would both give to and receive from the same fund."

We also held:

"Under our economic structure the needs of individuals are provided for through profitable work from which it is usual to set aside a fund for the emergencies of the future. When such provision is made for one's own self and members of one's own family, it is not a non-profit enterprise but the normal functioning within our economic structure. Members of a family combining for that purpose constitute a cooperative association. Such an association is not within the purview of this act.

"Originally, certain beneficial organizations were permitted to be incorporated as first class corporations. The Corporation Act of April 29, 1874, P. L. 73 sec. 2, par. 9, permitted such incorporations for 'The maintenance of a society for beneficial or protective purposes to its members from funds collected therein.' However, our legislature has seen fit to

place such associations outside of this act. In section 4, relating to the scope of the act, there is this statement: 'This Act does not relate to, does not affect, and does not apply to . . . (3) Any corporation whatsoever organized for any purpose or purposes involving pecuniary profit to its members or shareholders.'

"Clearly, the fundamental purpose of this corporation involves such a profit."

Our determinations thus made in that case have pertinent application to the facts in the case before us and we hereby adopt them as applicable. In the instant case, notwithstanding the broad language of the stated purpose in the application that "no part of the pecuniary gain or profits, incidental or otherwise, is to inure to the members of the corporation or to any individual member" the statements of the incorporators who appeared before the master are in direct contradiction, especially the expression "helping one another, that is, members of the family who might be in need of some funds or to pay for medical care".

There is no effort, in this particular case, to conceal the real purpose of this corporation which, in addition to perpetuating the family name and for social reasons, has for its purpose maintaining a fund for the relief of the needy members of one specific family, which is in no sense a work of charity. The head of a family who goes to the financial relief of his descendants, or the members of a family group, who "chip in" to aid a relative in distress, are not giving charity, as that word is understood by ordinary people and by the law. They are answering the call of the blood, and supporting the pride and dignity of the tribe. The cynical expression in the testimony of the witness, Jack Kravitz, that "charity begins at home" is a fallacy that distorts the lofty concept of true charity and belittles family obligations. Clearly, this is not such a charity as the legislators contemplated being

chartered as a corporation of the first class under the Act of 1933.

For these reasons, therefore, we disapprove the report and the recommendation of the master, refuse the charter, and dismiss the petition.